AMY, J.,
dissenting.
hi respectfully disagree with the majority that, in the factual context of this case, the type of error at issue is a deliberate and willful one. Neither do I find that the correction made reflects a change in intent of the parties.
The record establishes that there was intent to mortgage the property now at issue. Mr. Vickers demonstrated his intent in the Act of Correction which reads as follows:
(1) Page 1 of the above described Collateral Mortgage incorrectly showed the Mortgagor as Automotive Trucks & Tractors, L.L.C., when in truth and in fact, Page 1 should have shown the Mortgagor to be WILLARD HOUSTON VICKERS;
(2) Page 13 of the above described Collateral Mortgage incorrectly showed the Mortgagor to be Automotive Trucks & Tractors, L.L.C., when in truth and in fact, the Mortgagor should have been shown to be WILLARD HOUSTON VICKERS; and
(3)Page 14 of the above described Collateral Mortgage incorrectly showed that WILLARD HOUSTON VICK-ERS was signing said Collateral Mortgage as President of Automotive Trucks & Tractors, L.L.C. when in truth and in fact, WILLIARD HOUSTON VICKERS was signing said Collateral Mortgage as the Mortgagor, individually, and not as President of Automotive Trucks & Tractors, L.L.C.
Homeland affirmed its intent to take a mortgage on the property in its petition for intervention and the joint stipulation of facts. Its intent to mortgage the property is also evidenced in the fact that the bank loaned Mr. Vickers $150,000.00.
|2Ms. Vickers also acknowledges that intent in the joint stipulation of facts, which reads:
[The mortgage] was intended by the mortgagor and mortgagee to collateralize the debt owed to HOMELAND FEDERAL SAVINGS BANK set out in paragraph 2 of the original Petition for Intervention. However, at the time the Mortgage was executed and recorded, the mortgagor, Automotive Trucks & Tractors, was not the record owner of the property. The property was actually owned by WILLARD HOUSTON VICKERS individually. The Mortgage of July 20, 2005, was subsequently amended by notarial act which acknowledged the clerical errors and purported to correct the clerical errors with said Notarial Act of Correction!.]
In light of the clear understanding evidenced between all of the parties, and stipulated on the record, I find that the trial court’s determination that this was a *215 correction of a clerical error is supported by the record.
I also find that the trial court’s determination is consistent with In re Huber Oil of Louisiana, 311 B.R. 440 (Bkrtcy. W.D.La., 2004), wherein the court was faced with the question of whether an error was clerical or substantive. In that case, the error was related to a property description. The property description contained in the deed and a subsequent mortgage did not include certain property described in the purchase agreement. Ultimately, the Huber court reasoned that the record clearly reflected an intent between the parties to transfer the omitted portion and thus the error was clerical because it did not result from any conscious or reasoned decision to exclude the property. The court found that the transfer and mortgage documents, in addition to, affidavits of the parties were “uncon-troverted evidence [that] clearly establishes that the error was one occurring in the physical preparation of the documents and was not the result of any reasoning, determination or thought process-not one of the interested parties conscious and reasoned deeision[.]” Id. at 444. Accordingly I find that La.R.S. 35:2.1’s retroactive effect applies and the collateral mortgage primes Ms. Vickers judicial mortgage unless the retroactive effect |swill “prejudice the rights acquired by any third person [here, Ms. Vickers] before the act of correction [was] recorded where the third person reasonably relied on the original act.” La.R.S. 35:2.1(B). Ms. Vickers asserts in brief that when she recorded her “judgment in the LaSalle Parish public records on 10/16/2006, there was no entry in the mortgage records showing Mr. Vick-ers had a collateral mortgage on his immovable.” However, apart from this assertion, there is no evidence in the record that Ms. Vickers relied on the original collateral mortgage.
For these reasons, I believe an affirmation is warranted.